UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| EARL ROBINSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:19-cv-04251-JRS-DML |
| ) | |
| HUFFORD, ) | |
| YOKO SAVINO, ) | |
| WEXFORD CORPORATION, ) | |
| TINA COLLINS, ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING DEFENDANTS' UNOPPOSED MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF FINAL JUDGMENT**

Plaintiff Earl Robinson, an inmate with the Indiana Department of Corrections ("IDOC") brought this 42 U.S.C. § 1983 action alleging deliberate indifference to his serious medical needs in violation of the Eighth Amendment. Defendants Wexford of Indiana, LLC ("Wexford"), Dr. Yoko Savino, Nurse Tina Collins ("Nurse Collins"), and Health Service Administrator Christopher Hufford ("HSA Hufford") have moved for summary judgment on all of Mr. Robinson's claims. Dkt. 43. For the reasons below, the defendants' motion for summary judgment, dkt. [43], is **GRANTED**.

**I. SUMMARY JUDGMENT STANDARD**

A motion for summary judgment asks the Court to find that the movant is entitled to judgment as a matter of law because there is no genuine dispute as to any material fact. *See* Fed. R. Civ. P. 56(a). A party must support any asserted disputed or undisputed fact by citing to specific portions of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party may also support a fact by showing that the materials cited by an adverse party do not

establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the only disputed facts that matter are material ones—those that might affect the outcome of the suit under the governing law. *Williams v. Brooks*, 809 F.3d 936, 941−42 (7th Cir. 2016). "A genuine dispute as to any material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Daugherty v. Page*, 906 F.3d 606, 609−10 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court need only consider the cited materials and need not "scour the record" for evidence that is potentially relevant to the summary judgment motion. *Grant v. Trustees of Indiana University*, 870 F.3d 562, 573−74 (7th Cir. 2017) (quotation marks omitted); *see also* Fed. R. Civ. P. 56(c)(3).

Mr. Robinson failed to respond to the defendants' summary judgment motion. Accordingly, facts alleged in the motion are deemed admitted so long as support for them exists in the record. *See* S.D. Ind. Local Rule 56-1 ("A party opposing a summary judgment motion must . . . file and serve a response brief and any evidence . . . that the party relies on to oppose the motion. The

response must . . . identif[y] the potentially determinative facts and factual disputes that the party contends demonstrate a dispute of fact precluding summary judgment."); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission"). This does not alter the summary judgment standard, but it does "[r]educe[] the pool" from which facts and inferences relative to the motion may be drawn. *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997).). Thus, "[e]ven where a non-movant fails to respond to a motion for summary judgment, the movant 'still ha[s] to show that summary judgment [i]s proper given the undisputed facts.'" *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (quoting *Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 543 (7th Cir. 2011)).

## II. UNDISPUTED FACTS

At all times relevant to his complaint, Mr. Robinson was incarcerated at Correctional Industrial Facility ("CIF"). Dr. Savino has been employed by Wexford as a physician at CIF from April 29, 2019 to the present. Dkt. 43-2 at 1. Nurse Collins has been employed by Wexford as a registered nurse at CIF from April 1, 2017 to the present. Dkt. 43-3 at 1. HSA Hufford was employed by Wexford as the health service administrator at CIF from April 1, 2017 to December 28, 2019. Dkt. 43-4 at 1.

On April 11, 2018, an X-ray was performed of Mr. Robinson's left hand after he complained of persistent pain stemming from a sports injury four months earlier. Dkt. 43-2 at 2. The X-ray evidenced no acute bone abnormalities or significant degenerative change. *Id*.

On August 11, 2018, Mr. Robinson had a nurse visit in which he complained of pain from the same injury. *Id*. The nurse examined him and found pain with movement but full range of motion and no numbness or tingling. *Id*. Mr. Robinson had a wrap bandage for his hand and wrist, but he requested a brace or an MRI. *Id*. The nurse referred him to see a physician. *Id*.

### A. Dr. Savino

On August 22, 2018, Dr. Savino first saw Mr. Robinson for a provider visit. Dkt. 43-2 at 2. Mr. Robinson complained of pain and swelling from his index finger to his thumb and up to his wrist. *Id*. Dr. Savino reviewed the X-ray performed four months earlier and noted the impression was a normal X-ray showing no acute abnormalities. *Id*. She observed that his index finger was "slightly swollen," that he had no visible atrophy, and that his wrist was within normal limits. *Id*. She assessed that Mr. Robinson suffered a contusion of the left hand and planned to repeat an X-ray of his left index finger. *Id*. She ordered 15 g tablets of Mobic to help with Mr. Robinson's pain. The prescription for Mobic was valid until September 20, 2018. *Id*. On September 20, 2018, an X-ray of Mr. Robinson's left index finger was performed, and the results were normal. *Id*. at 3.

On July 30, 2019, Mr. Robinson had a nurse visit in which he complained again of pain in his left hand. *Id*. The nurse noted full range of motion in Mr. Robinson's wrist but a clicking sound when he moved it. *Id*. She also noted that there was no swelling or recent injury to his wrist. The nurse referred Mr. Robinson for a physician visit. *Id*.

On August 30, 2019, Dr. Savino saw Mr. Robinson for a second visit. *Id*. He told Dr. Savino that he had experienced sharp pain on the top of his left hand for the past year because of the same sports injury. *Id*. He did not feel any numbness, and Dr. Savino did not observe any obvious deformity. *Id*. Dr. Savino reviewed his two previous X-rays, which were both negative. *Id*. Mr. Robinson expressed his desire for an MRI because his hand hurt for one year after the sports injury. *Id*. Dr. Savino did not request an MRI of Mr. Robinson's left hand as it was not medically indicated. *Id*. at 5. Dr. Savino considered that both X-rays performed of Mr. Robinson's hand returned negative, Mr. Robinson was only seen sporadically for his hand pain, indicating that the pain was not a serious issue, and her physical examination of Mr. Robinson's hand on two

occasions indicated to her that the injury was soft tissue in nature and would resolve with a brace, exercises, and rest. *Id*. In light of those considerations, Dr. Savino found that there was no medical indication at that time that an MRI was needed for further evaluation. *Id*.

Dr. Savino explained to Mr. Robinson that MRI examinations are only indicated under certain circumstances, and his subjective and objective presentation did not indicate that an MRI was medically necessary. *Id*. Dr. Savino offered Mr. Robinson a wrap bandage or brace, which he refused. *Id*. at 3. Dr. Savino assessed Mr. Robinson with hand pain and prescribed 500 mg of generic Aleve (naproxen) twice a day with food. *Id*. The prescription was valid until September 12, 2019. *Id*. In her judgment as a physician, Dr. Savino will only prescribe 28 pills of naproxen, every 60 days because long-term daily use of naproxen can cause gastrointestinal problems, renal dysfunction, and cardiovascular problems. *Id*. Naproxen is designed for short-term use to alleviate acute pain but should not be used as a daily painkiller to treat chronic pain due to these side effects. *Id*.

Dr. Savino told Mr. Robinson that she would also submit an outpatient request for physical therapy of the hand. *Id*. at 3. That was the last time Dr. Savino saw Mr. Robinson for complaints of hand pain. *Id*. That same day, Dr. Savino submitted an outpatient request for Mr. Robinson to be approved for physical therapy. *Id*. at 4. The request was reviewed, and an alternative treatment plan was entered instead. *Id*. Mr. Robinson was advised to perform range of motion exercises for his left hand and wrist and to refrain from playing sports for one month, after which he could be re-evaluated. *Id*.

### B. Nurse Collins

On September 17, 2019, Mr. Robinson had a nurse visit in which he complained of left wrist and index finger pain. Dkt. 43-3 at 1. He told the nurse that naproxen was the only medication

that relieved his pain. *Id*. at 1-2. He also said that Tylenol was not helpful for his pain and hurt his stomach. *Id*. at 2. He requested that his order for naproxen be refilled because it could not be ordered from commissary. *Id*. The nurse put in the request for him to be referred to the provider for further evaluation. *Id*.

On September 17, 2019, Nurse Collins wrote a note deferring Mr. Robinson's appointment with Dr. Savino. *Id*. Nurse Collins noted that Mr. Robinson was requesting more naproxen, which is available through the commissary under its brand name Aleve. *Id*.; dkt. 43-2 at 5. Nurse Collins also noted that naproxen was not available for Mr. Robinson to order through a medical visit at that time because a patient is only allowed to have 28 tablets of naproxen every 60 days. Dkt. 43-3 at 2; *see also* dkt. 43-2 at 4-5 (Dr. Savino explaining why naproxen should only be used on a short-term basis). Because Mr. Robinson's last prescription for naproxen had been entered on August 30, 2019, fewer than 60 days had elapsed when Mr. Robinson requested a visit with Dr. Savino for more naproxen. Dkt. 43-3 at 2. Mr. Robinson was advised to order the pain medication from commissary, and the request for the provider referral was deferred. *Id*. Mr. Robinson was instructed to try a home exercise plan, refrain from playing sports for one month, and then submit a request to be re-evaluated. *Id*. At the time of the deferral, it had been less than one month since Dr. Savino evaluated Mr. Robinson for his hand pain. *Id*. at 2-3.

### C. HSA Hufford

In his role, HSA Hufford responded to medical grievances and helped to coordinate with nursing staff and medical providers appointments for offenders either within the facility or outside the facility. Dkt. 43-4 at 1. HSA Hufford helped to coordinate Mr. Robinson's appointment with Dr. Savino to address his hand pain following an informal grievance that he submitted. *Id*. at 2. Mr. Hufford also ensured that medical staff addressed all of Mr. Robinson's medical requests

including those related to his left hand and that Mr. Robinson had timely access to medical care and any treatment orders. *Id*. HSA Hufford had no power to direct the treatment Mr. Robinson received or to order any treatment such as pain medication or diagnostic studies like MRIs. *Id*. HSA Hufford also did not have the power to require that a physician see or evaluate a patient if the physician did not feel it was medically necessary. *Id*.

### III. DISCUSSION

Mr. Robinson was a convicted prisoner at all relevant times. This means that the Eighth Amendment applies to his deliberate indifference claim. *Estate of Clark v. Walker*, 865 F.3d 544, 546, n.1 (7th Cir. 2017) ("the Eighth Amendment applies to convicted prisoners"). To prevail on an Eighth Amendment deliberate indifference claim, a plaintiff must demonstrate two elements: (1) he suffered from an objectively serious medical condition; and (2) the defendant knew about the plaintiff's condition and the substantial risk of harm it posed but disregarded that risk. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019); *Petties v. Carter,* 836 F.3d 722, 728 (7th Cir. 2016); *Pittman ex rel. Hamilton v. Cty. of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014); *Arnett v. Webster,* 658 F.3d 742, 750−51 (7th Cir. 2011). "[A]n inmate is not entitled to demand specific care and is not entitled to the best care possible…." *Arnett,* 658 F.3d at 754. Rather, inmates are entitled to "reasonable measures to meet a substantial risk of serious harm." *Id.*

"A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Pyles v. Fahim,* 771 F.3d 403, 409 (7th Cir. 2014). The "subjective standard requires more than negligence and it approaches intentional wrongdoing." *Holloway v. Del. Cty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012).

### A. Wexford

First, Wexford is entitled to summary judgment because Mr. Robinson has advanced no valid theory of liability against it. Although a private entity, Wexford acts under color of state law and therefore may be liable for violating Mr. Robinson's Eighth Amendment rights under the theory of liability set forth in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *Walker*, 940 F.3d at 966. "Prevailing on such a claim requires evidence that a Wexford policy, practice, or custom caused a constitutional violation." *Id.* "[A] plaintiff must ultimately prove three elements: (1) an action pursuant to a municipal [or corporate] policy, (2) culpability, meaning that policymakers were deliberately indifferent to a known risk that the policy would lead to constitutional violations, and (3) causation, meaning the municipal [or corporate] action was the 'moving force' behind the constitutional injury." *Hall v. City of Chicago*, 953 F.3d 945, 950 (7th Cir. 2020).

Here, Wexford is entitled to judgment as a matter of law because Mr. Robinson's only claim against Wexford is impermissibly based on a theory of vicarious liability. Mr. Robinson stated during his deposition that he is suing Wexford solely because Wexford employs Dr. Savino, HSA Hufford, and Nurse Collins, not because of any express policy or custom of Wexford.  Dkt. 43-1. at 61-62. Because a theory of *respondeat superior* is an impermissible basis of liability against Wexford, it is entitled to judgment as a matter of law. *See Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021) (applying *Monell*, 436 U.S.) ("Circuit precedent establishes at this time that private corporations acting under color of law also benefit from [the] rejection of *respondeat superior* liability for an employee's constitutional violations.").

### B. HSA Hufford and Nurse Collins

Next, the claims against HSA Hufford and Nurse Collins fail as a matter of law because

the undisputed evidence shows that neither of these individuals was deliberately indifferent to Mr. Robinson's serious medical needs. First, HSA Hufford is entitled to summary judgment because Mr. Robinson bases the claim against HSA Hufford on his inability to change the course of Mr. Robinson's treatment. Dkt. 43-1 at p. 35. However, HSA Hufford's role is solely administrative; he did not have the authority to direct the treatment Mr. Robinson received or to order any treatment. Rather, his role was to ensure that Mr. Robinson received timely access to medical care and that any treatment orders issued for Mr. Robinson were being followed, and HAS Hufford attests in his affidavit that he did so. Dkt. 43-4 at 2. Specifically, HSA Hufford spoke to both Mr. Robinson and the treating staff about the care Mr. Robinson was receiving for his complaints and helped coordinate Mr. Robinson's appointment with Dr. Savino following an informal grievance that Mr. Robinson submitted. *Id*. HSA Hufford's conduct cannot be characterized as "approaching total unconcern," as is required for a showing of deliberate indifference. *Donald v. Wexford Health Sources*, 982 F.3d 451, 458 (7th Cir. 2021) (internal quotations omitted).

Similarly, Nurse Collins is entitled to summary judgment because Mr. Robinson has not shown that she was deliberately indifferent in her role. Although Mr. Robinson contends that Nurse Collins improperly delayed one of his referrals to see Dr. Savino and request additional naproxen, the undisputed evidence shows that his most recent referral to see Dr. Savino had been less than a month earlier and that Dr. Savino will only prescribe 28 pills of naproxen every 60 days because long-term daily use of naproxen can lead to renal, gastrointestinal, and cardiovascular problems. Dkt. 43-2 at 5. Furthermore, Nurse Collins was entitled at this time to believe that Dr. Savino was taking appropriate steps to treat Mr. Robinson's hand and to rely on Dr. Savino to provide appropriate care. *See McCann v. Ogle Cty., Illinois*, 909 F.3d 881, 887 (7th Cir. 2018) (noting that

it is not the job of the nurse to second-guess the care provided by the doctors). Because no reasonable jury could find that Nurse Collins exhibited deliberate indifference, Mr. Robinson's claim against her fails as a matter of law.

### C. Dr. Savino

Finally, Dr. Savino is entitled to summary judgment. The Court must defer to Dr. Savino's treatment decisions "unless no minimally competent professional would have so responded under those circumstances" because "there is no single proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019) (internal quotation marks and citations omitted). As stated above, deliberate indifference "requires something approaching a total unconcern for the prisoner's welfare in the face of serious risks." *Donald*, 982 F.3d at 458 (internal quotations omitted).

Here, the undisputed evidence shows that Dr. Savino exercised her professional judgment when making treatment decisions for Mr. Robinson. Mr. Robinson contends that Dr. Savino was deliberately indifferent to his hand pain because she refused to send him for an MRI. But the record shows that Dr. Savino's conclusion that an MRI was not indicated for Mr. Robinson's hand is based on her considered medical judgment, specifically her multiple examinations of Mr. Robinson's hand, the two X-rays performed on Mr. Robinson's hand that both came back normal, and her assessment that the injury was soft-tissue in nature and would resolve with a brace, exercises, and rest. Dkt. 43-2 at 5. Accordingly, no reasonable juror could find that Dr. Savino's treatment of Mr. Robinson "was not the product of medical judgment." *Cesal*, 851 F.3d at 724; *see also Zaya v. Sood*, 836 F.3d 800, 805 (7th Cir. 2016) ("By definition a treatment decision that's based on professional judgment cannot evince deliberate indifference because professional judgment implies a choice of what the defendant believed to be the best course of treatment."). Furthermore,

Mr. Robinson is not entitled to any specific course of treatment and cannot prevail on a deliberate indifference claim solely because he disagrees with Dr. Savino's medical judgment that he is not a candidate for an MRI. *See Arnett*, 658 F.3d at 754 ("[A]n inmate is not entitled to demand specific care"). Because no reasonable juror could find that Dr. Savino was deliberately indifferent to Mr. Robinson's serious medical needs, she is entitled to judgment as a matter of law.

To the extent that Mr. Robinson contends that Dr. Savino should have managed his pain with more frequent prescriptions for naproxen, his argument is unavailing in light of Dr. Savino's concerns regarding long-term daily use of naproxen and the availability of naproxen through the commissary. The fact that Mr. Robinson still suffered from some pain due to his injury does not indicate that Dr. Savino was deliberately indifferent. *See Leiser v. Hoffman*, --- F. App'x ---, 2021 WL 3028147, *3 (7th Cir. July 19, 2021) ("[D]octors are not deliberately indifferent when they are unable to eliminate completely a patient's pain.") (citing *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996)).

Although Mr. Robinson disagreed with Dr. Savino's treatment decisions, the record shows that Dr. Savino exercised her medical judgment in making those decisions. *Lockett*, 937 F.3d at 1024–25; *see also Cesal*, 851 F.3d at 722 ("[M]ere disagreement with a doctor's medical judgment is not enough to support an Eighth Amendment violation."). Because no reasonable jury could find that Dr. Savino was deliberately indifferent to Mr. Robinson's hand pain, summary judgment must be granted in her favor.

## IV. CONCLUSION

For the reasons above, the defendants' motion for summary judgment, dkt. [43], is **GRANTED**. The action is **dismissed with prejudice**. Final judgment consistent with this Order and the Screening Order at Docket No. 10 shall now issue.

**IT IS SO ORDERED.**

Date: 9/28/2021

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

EARL ROBINSON
262623
PENDLETON - CORRECTIONAL INDUSTRIAL FACILITY
CORRECTIONAL INDUSTRIAL FACILITY
Inmate Mail/Parcels
5124 West Reformatory Road
PENDLETON, IN 46064